MIDWESTERN INDEMNITY COMPANY et al., Appellants,

v.

WISER et al., Appellees.

[Cite as *Midwestern Indemn. Co. v. Wiser* (2001), 144 Ohio App.3d 354.]

Court of Appeals of Ohio,
Eleventh District.

No. 2000–A–0055.

Decided June 25, 2001.

*Glowacki & Associates Co., L.P.A., James L. Glowacki, James J. Imbrigiotta* and *Robert B. Sutherland,* for appellants, Midwestern Indemnity Company and James Rohrbough.

*Warren & Young, P.L.L.,* and *William E. Riedel; Smith & Miller* and *Virginia K. Miller,* for appellees.

---

FORD, Judge.

This is an appeal from the Ashtabula County Court of Common Pleas. Appellants, Midwestern Indemnity Company ("Midwestern") and James Rohrbough ("Rohrbough"), appeal the trial court's judgment entry dated July 21, 2000, granting summary judgment in favor of appellees, Mike Wiser, as natural parent and guardian of Andy Wiser, a minor, and Andy Wiser.

The record reveals that appellee Andy Wiser was born to appellee Mike Wiser and Gail Hansen ("Hansen") on November 6, 1986. Appellee Mike Wiser and Hansen were divorced in March 1994, and appellee Mike Wiser was the residential custodian of appellee Andy Wiser and his sister, Nicole. On April 30, 1995, appellee Andy Wiser was playing with a lighter and caused a fire at the residence of his maternal grandfather, appellant Rohrbough. The home was insured by appellant Midwestern.

On May 27, 1998, appellants filed a complaint against appellee Andy Wiser, appellee Mike Wiser, and Hansen, claiming negligent parental supervision and vicarious liability. On March 15, 2000, appellees Mike Wiser and Andy Wiser filed a motion for summary judgment, in which they alleged that appellee Andy Wiser, an eight-year-old minor, was entitled to a presumption that he was incapable of negligence. Appellee Mike Wiser also asserted that he should not be found liable pursuant to R.C. 3109.09 because his son did not act intentionally in causing the fire, and that he was not liable because he was not present with appellee Andy Wiser at the time of the incident.

On April 24, 2000, appellants filed a brief in opposition to the motion for summary judgment. Appellants argued that the presumption against negligence on the part of appellee Andy Wiser was rebutted upon a showing that his actions fell below the standard of care that other children of like age and experience are accustomed to exercising under the same or similar circumstances. Appellant also claimed that appellee Mike Wiser should be found negligent because he was aware of his son's dangerous propensities.

The record reveals that on April 30, 1995, appellee Mike Wiser delivered appellee Andy Wiser and Nicole to Hansen so they could attend the funeral of her stepmother's mother. Appellee Mike Wiser did not attend the funeral. After the services, Hansen transported her two children to the home of her father, appellant Rohrbough, and then to the residence next door, which belonged to the woman who had passed away. Appellee Andy Wiser told Hansen that he wanted to go outside and play. She permitted him to go outside, but she told him not to go over to his grandfather's house.

Hansen explained that she did not want her son to go to his grandfather's house because "there was nobody over next door and [he] needed supervision" as he had a "tendency to get into trouble." She also stated that at that time, appellee Andy Wiser had "undiagnosed Attention Deficit Disorder." Hansen further indicated that appellee Andy Wiser "just had difficulty sitting still, listening, paying attention, completing his work. He was very disruptive in classrooms * * *."

Even though Hansen told him not to go to his grandfather's house, appellee Andy Wiser proceeded to the home and found a lighter in the drawer of a table in

the bedroom. He then went into his grandfather's garage, where hay was stored, and began playing with the lighter, which caused the hay to catch on fire. Hansen asked appellee Andy Wiser what happened, and he said that he did not know, he just knew smoke was coming from the garage.

After the incident, appellee Andy Wiser was admitted to Belmont Pines Hospital and diagnosed with Attention Deficit Hyperactivity Disorder. In her deposition, Hansen mentioned that both she and appellee Mike Wiser had caught appellee Andy Wiser playing with matches in the past, but this was "the first time that anything that he played with actually caught fire." She explained that she and appellee Mike Wiser would yell at appellee Andy Wiser, and he would respond that he did not know why he played with those things.

In a judgment entry dated July 21, 2000, the trial court granted summary judgment in favor of appellees Mike Wiser and Andy Wiser.[1] Appellants timely filed the instant appeal and now assert the following as error:

"[1.] The trial court erred in holding no issue of material fact exists with regard to whether the acts of [a]ppellee Andy Wiser, a minor, fall below the standard of care for children of like age, education and experience, such that [a]ppellee is entitled to summary judgment on [a]ppellants' negligence claim.

"[2.] The trial court erred in holding no issue of material fact exists with regard to [a]ppellants' negligent parental supervision claim against [a]ppellee Mike Wiser, such that [a]ppellee is entitled to summary judgment."

As appellants' two assignments of error are interrelated, they will be addressed in a consolidated fashion. Both of appellants' arguments are in relation to whether the trial court erred in granting summary judgment in favor of appellees.

In order for a summary judgment to be granted, the moving party must prove that "(1)no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199.

The Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276:

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which*

---

1. On August 4, 2000, appellants dismissed the action against Hansen.

*demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * * " (Emphasis *sic.*)

If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. The *Brown* court stated that "we review the judgment independently and without deference to the trial court's determination." *Id.* An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. *Id.*

 We note that at common law, parents are not ordinarily held liable for the torts of their child. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505, 509. Liability may arise, however, based upon the parents' conduct where the "injury committed by the child is the foreseeable consequence of [the] parent's negligent act." *Id.*

The Supreme Court recognized three situations where parents might incur liability: (1) when they negligently entrust their child with an instrument which becomes a source of danger; (2) when they know of the child's wrongdoing and consent to it, direct it, or sanction it; and (3) when they fail to exercise reasonable control over the child when they know, or should know, that injury to another is a probable consequence. *Id.* at 217–218, 556 N.E.2d at 508–510.

 In order to overcome a properly supported motion for summary judgment on a negligence claim, a plaintiff must identify a duty owed him by the defendant. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR 20, 443 N.E.2d 532, syllabus. "The existence of a duty in a negligence action is a question of law," *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270, and depends on the foreseeability of the injury. *Huston* at 217, 556 N.E.2d at 508. "Injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone." *Id.*

 In the case at bar, we first note that appellee Mike Wiser did not provide appellee Andy Wiser with the dangerous instrumentality. The record reveals

that appellee Andy Wiser found the lighter on his own in a drawer in the bedroom of the home of his grandfather, appellant Rohrbough.

Second, there was no evidence that appellee Mike Wiser consented, directed, or sanctioned any of appellee Andy Wiser's previous wrongdoings. There was no evidence in the record that appellee Mike Wiser consented to the wrongdoing, as he was not around appellee Andy Wiser at the time of the incident. Appellee Mike Wiser was not supervising appellee Andy Wiser at the time the fire occurred. He had dropped the children off to be with Hansen for the funeral long before the fire even took place.

 Finally, based upon the record before us, it cannot be said that the fire at appellant Rohrbough's house was a probable and foreseeable consequence of any parental negligence or lack of supervision and control on the part of appellee Mike Wiser. Appellee Mike Wiser was not around appellee Andy Wiser when the fire broke out because he had dropped appellee Andy Wiser off to be with Hansen for a funeral.

Although, the evidence presented revealed that appellee Mike Wiser and Hansen had caught appellee Andy Wiser playing with matches in the past, and they would yell at him, Hansen stated that the April 30, 1995 incident was "the first time that anything that he played with actually caught fire." Thus, appellee Andy Wiser had never actually set anything on fire. The Supreme Court of Ohio has stated that "[i]t is a matter of common knowledge that matches, the lighting of fires and fire itself are almost irresistible to young children * * *." *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 864.

 Further, at the time of the fire, appellee Andy Wiser had not yet been diagnosed with Attention Deficit Hyperactivity Disorder. Hence, we conclude that he could not be held to the same standard as the average eight year old. When appellee Andy Wiser was reprimanded in the past by his parents, he would respond that he did not know why he played with "those things." Accordingly, it is our view that the evidence submitted by appellants is inadequate to disclose parental responsibility for the damages. The motion for summary judgment filed by appellees was properly sustained.

For the foregoing reasons, appellants' assignments of error are not well taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

*Judgment affirmed.*

WILLIAM M. O'NEILL, P.J., and GRENDELL, J., concur.