OPINION
{¶ 1} Plaintiffs-appellants James R. Owens, Jr., a minor, and his parents, James and Rhonda Owens (hereinafter the Owenses), appeal from a directed verdict in favor of defendant-appellee Steve Renacs on their claims for damages resulting when the truck Renacs was driving ran over James Owens, Jr.'s ankle. The Owenses contend that the trial court erred in granting Renacs's motion for a directed verdict, because there is evidence in the record from which reasonable minds could reach different conclusions regarding whether Renacs acted negligently and whether James Owens, Jr., acted negligently.
 {¶ 2} The Owenses contend that there is evidence that Renacs acted negligently in failing to maintain a proper lookout. We conclude, after construing the evidence most strongly in favor of the Owenses, that there is insufficient evidence to permit a reasonable mind to find that Renacs failed to maintain a proper lookout, or that he should have anticipated that James Owens, Jr., would take two steps backward into Renacs's right-of-way and the path he was taking. We conclude that the trial court did not err in granting Renacs's motion for a directed verdict.
 {¶ 3} The Owenses also contend that the trial court erred in granting Renacs's motion for a directed verdict, because there is evidence from which reasonable minds could reach different conclusions regarding whether James Owens, Jr., acted negligently. Having concluded that the trial court properly granted a directed verdict upon the issue of Renacs's negligence, we find it unnecessary to address the issue of James's negligence.
 {¶ 4} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 5} In March, 2001, thirteen-year-old James R. Owens, Jr., was playing basketball on Arthur Avenue with two of his friends, Terry Howard and Aaron Cole. James and his friends were playing basketball in a "box," which was a space created on the street between two parked cars. The basketball hoop was set up so that the rim hung over the street, approximately one to two feet. The free-throw line was close to the middle of the street. Although vehicles could be parked on both sides of Arthur Avenue, there was space for two vehicles to pass each other at the same time.
 {¶ 6} That same day, Steve Renacs was driving down Arthur Avenue with his friend. While stopped at an intersection on Arthur Avenue, Renacs noticed the three boys playing basketball. When Renacs proceeded down Arthur Avenue and approached the location where the boys were playing, he encountered another vehicle coming from the opposite direction. Renacs allowed the oncoming vehicle to pass him by pulling over behind one of the parked cars the boys were using to create their "box." While stopped behind the parked car, Renacs observed James standing under the hoop, one to two feet from the curb. When the oncoming vehicle passed, Renacs pulled out around the parked car and proceeded down Arthur Avenue.
 {¶ 7} During this time, Terry and Aaron went up into the yard to get more basketballs, while James stood under the basketball hoop, one to two feet from the curb. James, not looking either way down the street for vehicles approaching, then took two full steps backwards. At that moment, James was struck by Renacs's vehicle driving down Arthur Avenue. When Renacs's friend yelled for him to stop, Renacs hit the brakes immediately and veered to the left, stopping. James's left ankle was pinned under one of the tires of Renacs's vehicle. After observing this situation, Renacs's friend told Renacs to back up and Renacs backed his vehicle up five to six feet. James sustained injuries as a result of the accident.
 {¶ 8} In October, 2002, James Owens, Jr. and his parents, James and Rhonda Owens, filed a complaint for personal injuries against Renacs, alleging that Renacs acted negligently, causing the injury to James. This matter proceeded to a jury trial, and Renacs moved for a directed verdict at the close of the Owenses' case. The trial court granted Renacs's motion for a directed verdict, finding that James acted negligently, and that there was no evidence that Renacs acted negligently. From this judgment, the Owenses appeal.
 II {¶ 9} The Owenses' sole assignment of error is as follows:
 {¶ 10} "The trial court erred in granting defendant-appellee's motion for directed verdict."
 {¶ 11} The Owenses contend that the trial court erred in granting Renacs's motion for a directed verdict, because there is evidence in the record from which reasonable minds could reach different conclusions regarding whether Renacs acted negligently and whether James acted negligently.
 {¶ 12} A motion for a directed verdict must be granted where the court, construing the evidence most strongly in favor of the non-moving party, finds that reasonable minds could come to but one conclusion, upon any determinative issue, and that conclusion is adverse to the non-moving party. Texler v. D.O. SummersCleaners Shirt Laundry Co., 81 Ohio St.3d 677, 679,1998-Ohio-602, 693 N.E.2d 271. A motion for a directed verdict must be denied where there is substantial, competent evidence in support of the non-moving party, upon which reasonable minds could reach different conclusions. Id. In addition, the court must not consider the weight of the evidence or the credibility of the witnesses, but must determine whether there exists any evidence of substantial, probative value in support of the non-moving party. Id. A motion for a directed verdict presents a question of law, in that the materiality of the evidence is examined rather than the conclusions to be drawn from the evidence. Id., at 680.
 {¶ 13} The Owenses contend that the trial court erred in granting Renacs's motion for a directed verdict, because there is evidence that Renacs acted negligently in failing to maintain a proper lookout.
 {¶ 14} A driver of a vehicle must yield the right of way to a pedestrian crossing a roadway within a crosswalk. R.C.4511.46(A). However, when crossing a roadway at any point other than within a crosswalk, a pedestrian must yield the right of way to all vehicles upon the roadway. R.C. 4511.48(A). In addition, "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle, * * * which is so close as to constitute an immediate hazard." R.C. 4511.46(B). A driver of a vehicle must exercise "due care to avoid colliding with any pedestrian upon any roadway." R.C. 4511.48(E).
 {¶ 15} "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path. R.C.4511.01(UU)(1). Pedestrians crossing a roadway at any point other than within a marked crosswalk must yield to this preferential right of way of vehicles. R.C. 4511.48(A). A driver need not look for pedestrians or vehicles violating his right-of-way. SeeDeming v. Osinki (1970), 24 Ohio St.2d 179, 180-81,265 N.E.2d 554. However, the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian in his right-of-way upon discovering a dangerous or perilous situation. Id.; R.C.4511.48(E); Hawkins v. Shell (June 4, 1998), Cuyahoga App. No. 72788." Snider v. Nieberding, Clemont App. No. CA2002-12-105, 2003-Ohio-5715, at ¶ 9.
 {¶ 16} In the case before us, it is undisputed that James Owens, Jr., was not crossing the roadway within a crosswalk, and that the vehicle driven by Renacs was in the right of way. The Owenses offered no evidence that Renacs operated his vehicle in violation of any law or ordinance. It is undisputed that Renacs was operating his vehicle within the legal speed limit at the time of the accident, and the record is devoid of any traffic citations issued to Renacs. Since Renacs had the right to proceed uninterruptedly in his path of travel on Arthur Avenue, whether a directed verdict is appropriate depends solely upon whether he failed to exercise due care to avoid hitting James Owens, Jr.
 {¶ 17} "[T]he fact that a vehicle hits an individual on a roadway does not establish negligence. Dixon v. Nowakowski
(Aug. 27, 1999), Lucas App. No. L-98-1372. Negligence is never presumed, it must be proven. Biery v. Pennsylvania RR. Co.
(1951), 156 Ohio St. 75, 99 N.E.2d 895, paragraph two of the syllabus. `In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary.' Id." Snider, supra at ¶ 12.
 {¶ 18} The record shows that on the day of the accident, James and his friends were playing basketball on Arthur Avenue in a "box," which was a space created on the street between two parked cars. The record also shows that the basketball hoop was set up so that the rim hung over the street, one to two feet. The testimony in the record shows that James's friends, Terry Howard and Aaron Cole, went up into the yard to get more basketballs, while James stood under the basketball hoop, one to two feet from the curb. James testified that he then took two full steps backwards, not looking either way down the street for vehicles approaching. At that moment, James was struck by Renacs's vehicle driving down Arthur Avenue.
 {¶ 19} Terry also testified to these facts stating that James was standing under the basketball hoop when he took two full steps backwards and was struck by Renacs's vehicle. Terry testified that he never saw Renacs's vehicle veer in any direction prior to the moment he struck James. Terry further testified that James was walking backwards to go for a shot from the free-throw line, which was located close to the middle of the street. Terry testified that James stepped backwards into the side of Renacs's vehicle, and that Renacs hit the brakes immediately and veered to the left stopping.
 {¶ 20} Renacs testified that he saw the three boys on Arthur Avenue. He testified that when he observed an oncoming vehicle approaching from the opposite direction, he pulled over behind one of the parked cars used to create the "box" the boys were playing basketball in. Renacs testified that he saw James standing one to two feet from the curb facing the basketball hoop. Renacs testified that after the oncoming vehicle passed, he pulled back into the street and passed the parked car with two to three feet between his car and the parked car. Renacs testified that he did not see James move as he was passing him on Arthur Avenue. Renacs testified that when his friend yelled for him to stop, he veered his vehicle to the left and stopped. He testified that his friend threw his arms out of the passenger side window as if to catch James.
 {¶ 21} After reviewing the record, we conclude that the Owenses have failed to rebut the presumption that Renacs exercised ordinary care. The evidence shows that Renacs exercised due care by pulling over to let an oncoming vehicle pass, after noticing the kids playing basketball on the street. When stopped behind the parked car, Renacs noticed James standing one to two feet from the curb. There is no substantial, competent evidence showing that after this point, Renacs then failed to exercise due care.
 {¶ 22} The Owenses argue that Renacs acted negligently by veering into the "box," striking James. The Owenses rely on the following testimony by James Owens, Jr., to support their argument:
 {¶ 23} "Q. At that point when you're struck, are you within that boxed area that you talked about between those two cars?
 {¶ 24} * *
 {¶ 25} "A. Yes."
 {¶ 26} Relying on Terry's testimony, the Owenses further argue that Renacs acted negligently in failing to maintain a proper lookout by talking to his friend while driving. Although Terry testified that Renacs was looking "[t]owards the right side as if he was talking to his passenger," he later clarified that Renacs was looking in the direction where he and James Owens, Jr., were.
 {¶ 27} After reviewing the record, we conclude that there is no substantial, competent evidence that Renacs was negligent, upon which reasonable minds could reach different conclusions. It is uncontroverted that James was standing one to two feet from the curb when he then took two steps backwards without looking. Renacs testified that he saw James standing near the curb, but he did not see James move as he was passing him on Arthur Avenue. There is no evidence that Renacs noticed James take the two steps backwards in time to anticipate or perceive any risk of injury to James. Terry testified that he witnessed James step backwards into the side of Renacs's vehicle, and that he did not see Renacs's vehicle veer in any direction prior to the moment he struck James. In the absence of foreseeable injury or any proof that Renacs was negligent, we conclude that the trial court correctly decided that Renacs did not violate any duty of care toward James.
 {¶ 28} We conclude, after construing the evidence most strongly in favor of the Owenses, that reasonable minds could come to but one conclusion upon the issue of Renacs's negligence, and that conclusion is adverse to the non-moving party, the Owenses. We conclude that the trial court did not err in granting Renacs's motion for a directed verdict.
 {¶ 29} The Owenses contend that the trial court erred in granting Renacs's motion for a directed verdict, because there is evidence from which reasonable minds could reach different conclusions regarding whether James Owens, Jr., acted negligently. Renacs contends that James Owens, Jr., was negligent per se for failing to yield the right of way to Renacs's oncoming vehicle on Arthur Avenue in violation of R.C. 4511.48(A) and for failing to look for oncoming traffic and walking backwards into Renacs's vehicle on Arthur Avenue, in violation of R.C.4511.46(B).
 {¶ 30} Because we have concluded that the trial court properly granted a directed verdict upon the issue of Renacs's negligence, we find it unnecessary to address the issue of James's negligence. However, we do note that although James may have failed to comply with the provisions of R.C. 4511.48(A) and/or R.C. 4511.46(B), "a violation of a statute or ordinance by a child is not negligence per se."Bentley v. Stewart (1992),71 Ohio App.3d 510, 513, 594 N.E.2d 1061. James was thirteen years old at the time of the accident. "It is the jury's role to determine whether the violation of a statute or ordinance by a child constitutes negligence considering his age, education, experience and intelligence." Id., citation omitted. Therefore, even if James was in violation of R.C. 4511.46(B) or R.C.4511.48(A), reasonable minds could find his actions were not negligent. See id.
The Owenses' sole assignment of error is overruled.
 III {¶ 31} The Owenses' sole assignment of error having been overruled, the judgment of the trial court is affirmed.
Brogan and Wolff, JJ., concur.